**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES | * | |
| vs. | * | Case No.: 21-CR-28-APM |
| THOMAS E. CALDWELL | * | |

\* \* \* \* \* \* \* \* \* \* \*

**MOTION FOR DISMISSAL OF INDICTMENT**

Comes now Defendant Thomas E. Caldwell, by and through undersigned counsel, David W. Fischer, Esq., and pursuant to Fed. R. Crim. P. 12(b)(3)(B), and respectfully requests that the Court dismiss the indictment because, on its face, it: (i) fails to state an offense as to Counts One, Two, Four, and Nine; and (ii) Count Nine is duplicitous and unduly prejudicial.

**Statement of the Case**

On May 30, 2021 the Government filed its Fourth Superseding Indictment (hereinafter "the Indictment") against Caldwell and his co-defendants.   ECF No. 210. Caldwell is charged with four counts in the Indictment:   Count 1 --Conspiracy (18 U.S.C. § 371), Count 2 --Obstruction of an Official Proceeding (18 U.S.C. § 1512(c)(2)), Count 4 --Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1)), and Count 9 --Tampering with Documents or Proceedings (18 U.S.C. § 1512(c)(1)).   Id., ¶¶ 32, 166, 170, 183.   As the Court is fully versed with the background of the instant case, Caldwell will dispense with a long-winded recital of the facts.   To the point:   The Indictment against Caldwell, for the reasons stated below, should be

1

dismissed *in toto*.

## Standard of Review

A defendant may move to dismiss an indictment on the grounds that, *inter alia*, it fails to invoke the Court's jurisdiction, contains duplicitous counts, or fails to state an offense.   Fed. R. Crim. P. 12(b)(3)(B).   In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true."   United States v. Syring, 522 F. Supp. 2d. 125, 128 (D.D.C. 2007); United States v. Sampson, 371 U.S. 75, 78 (1962).   Accordingly, "the Court cannot consider facts beyond the four corners of the indictment."   United States v. Ring, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (internal quotations omitted).

## Argument

Hall of Fame college basketball coach Bobby Knight, upon watching his player miss an easy basket by attempting a crowd-pleasing slam-dunk (when a routine layup would have guaranteed his team two points), admonished:   "Don't get cute.   Just execute!"   In the instant case, there is no doubt that on January 6th, 2021 multiple individuals committed crimes at the Capitol.[1]   The crimes were captured on video,

---

[1] Caldwell, however, clearly did not commit *any* crimes.   As noted in previous filings, the Government initially charged Caldwell while under the misimpression that he was a member of the Oath Keepers, held a "leadership role" ("the Commander") in that organization, and that he entered the Capitol on January 6th.   The Government has since conceded in court filings and at Caldwell's second detention hearing that there is "no evidence" to support these claims.   Additionally, in prior charging documents the Government mistakenly alleged that Caldwell and his co-defendants had *specifically planned* for multiple weeks subsequent to Election Day to *attack the Capitol*, a claim that

2

recorded on social media, broadcast live on national television, and observed by numerous police and civilian witnesses.   In short, the Government was presented with the legal equivalent of an uncontested layup.   Instead of following Coach Knight's advice, the Government has opted to go for the crowd-pleasing[2] slam-dunk in the Indictment, charging multiple defendants, including Caldwell, under statutes of dubious applicability.

## I.    Count One must be dismissed as it fails to state an offense.

In Count One, the Government alleges that Caldwell and his co-defendants conspired to

> commit an offense against the United States, namely, to corruptly obstruct,
> influence, and impede an *official proceeding*, that is, the Certification of the
> Electoral College vote, in violation of Title 18, United States Code, Section
> 1512(c)(2).

---

has now been debunked by discovery and *notably dropped from the Government's latest indictment*.   Additionally, the "photos" and "video" that the Government claims that Caldwell deleted have, interestingly, been located in a download of Caldwell's seized cell phone *that was recently turned over by the Government*.   Finally, Caldwell adamantly denies that he trespassed as charged in the indictment.

2  It seems like yesterday that the "crowd" that needs to be "pleased" was (correctly) lecturing Americans about the dangers inherent in the Department of Justice failing to exercise restraint in selecting out those who deserve to be prosecuted, over-charging defendants, and singling out proponents of unpopular ideas or beliefs for outsized punishments.   The "crowd" should consider historically questionable prosecutions of yesteryear that involved labor unions, the Palmer Raids, the Smith Act, the Black Panthers, Vietnam protesters, etc.   The Spanish philosopher George Santayana warned more than a century ago:   "Those who cannot remember the past are condemned to repeat it."   The "crowd" should consider those words carefully now, as the levers of prosecutorial power, controlled now by members *in simpatico* with the "crowd," will one day be controlled by others who will be tempted to dispense commensurate justice at the urging of the "opposing crowd."

ECF No. 210, ¶32 (emphasis added).   A "conspiracy" requires, at a minimum, an

agreement to commit a substantive offense against the United States.   United States vs.

Treadwell, 760 F.2d 327, 333 (D.C. Cir. 1985).   In the instant case, Count One charges

that the criminal objective of Caldwell and his co-defendants was to obstruct, pursuant to

18 U.S.C. § 1512(c)(2), an "official proceeding," i.e., the Certification of the Electoral

College vote.   ECF No. 210, ¶32.

        The Court is, accordingly, presented with the following question of law:   Did the

Electoral College certification before the Congress on January 6th constitute an "official

proceeding" under 18 U.S.C. § 1512(c)(2)?   The answer to that question, as outlined

below, is a resounding "no."   As such, Count One must be dismissed as failing to state

an offense, as there can be no conspiracy without a viable substantive offense as its

objective.

## A.  As with all penal statutes, § 1512 must be strictly construed.

        To determine legislative intent, courts "always begin with the text of the statute."

United States v. Barnes, 295 F.3d 1354, 1359 (D.C. Cir. 2002).   "It is elementary that the

meaning of a statute must, in the first instance, be sought in the language in which the act

is framed, and if that is plain . . . the sole function of the courts is to enforce it according

to its terms."   United States v. Hite, 769 F.3d 1154, 1160 (D.C. Cir. 2014) (quoting

Caminetti v. United States, 242 U.S. 470, 485 (1917) (internal quotes omitted)).   "The

search for the meaning of the statute must also include an examination of the statute's

context and history." Hite, 769 F.3d at 1160.   Moreover, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." United States v. Lanier, 520 U.S. 259, 268 (1997).   In relation to § 1512, the Supreme Court has instructed lower courts to "exercise[] restraint in assessing the reach of [the] . . . statute both out of deference to . . . Congress . . . and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed[.]"   United States v. Arthur Anderson, LLP, 544 U.S. 696, 703 (2005) (internal citations omitted) (strictly construing § 1512(b)(2)'s broadly worded language in finding that jury instructions failed to instruct that knowledge of wrongdoing and proof of a nexus between the alleged obstruction and an official proceeding were required elements of the offense).

## B. An "official proceeding" under § 1512 is judicial or quasi-judicial in nature.

A review of the text, history, and judicial interpretation of § 1512, especially in light of the Supreme Court's long-standing guidance to strictly construe penal statutes, demonstrates that this statute, which punishes obstruction of "official proceedings," does not apply to the Electoral College certification.   Section 1512(c)(2), which Caldwell is charged with conspiring to violate, prohibits "corruptly . . . obstructing, influencing, or impeding any *official proceeding*, or attempting to do so."   Id. (emphasis added).   The term "official proceeding," in turn, is defined in 18 U.S.C. § 1515(a)(1) as:

(A) a proceeding before a judge or court of the United States, a United States

5

magistrate judge, a bankruptcy judge, a judge of the United States Tax
Court, a special trial judge of the Tax Court, a judge of the United States
Court of Federal Claims, or a Federal grand jury;

(B) *a proceeding before the Congress*;

(C) a proceeding before a Federal Government agency which is authorized by
law; or

(D) a proceeding involving the business of insurance whose activities affect
interstate commerce before any insurance regulatory official or agency or
any agent or examiner appointed by such official or agency to examine the
affairs of any person engaged in the business of insurance whose activities
affect interstate commerce[.]

18 U.S.C. § 1515(a)(1) (emphasis added).   Of these definitions, the only one that could

apply to Count One is subsection (a)(1)(B) ("a proceeding before the Congress").

While the term "proceeding"—as used in the lay sense and read in isolation—

could possibly be read to include any official business done in courts, agencies, or

Congress, its contextual placement overwhelming suggests that Congress intended to use

a "legal" definition of "proceeding" such as:   1) "The regular and orderly progression of

a lawsuit, including all acts and events between the time of commencement and the entry

of judgment," 2) "Any procedural means for seeking redress from a tribunal or agency,"

or 3) "The business conducted by a court or other official body; a hearing."   *Black's Law

Dictionary* 1241 (8th ed. 2004).

Particularly telling is how § 1512 is titled: "**Tampering with a witness, victim, or

an informant**."   Section 1512's title confirms that it was enacted by Congress to punish

6

obstructive acts designed to illegitimately affect the presentation of evidence in judicial or quasi-judicial hearings before courts, agencies, and Congress.   Additionally, the statutory context makes clear that § 1512 and related statutes deal entirely with *obstruction of justice*, i.e., interference with the due administration of investigations and legal process.   Section 1512, for example, is saturated with terms tied to court-like proceedings such as "testimony," "record[s]," "document[s]," "legal process," "summoning," "witness," "tamper," "availability," "attendance," and "production." Moreover, § 1512 punishes actions tied to attempts to subvert justice, including witness and evidence tampering, subornation of perjury, withholding documents, and other similar actions.   Clearly, the "proceedings" protected by § 1512, including "proceedings before the Congress," are *adjudicatory or inquisitive in nature*, requiring investigations, due process, sworn testimony, and document production.[3]   In short, a plain reading of § 1512 demonstrates that the term "official proceeding" refers to "some formal hearing before a tribunal[.]"   United States v. Ermoian, 727 F.3d 894, 901 (9th Cir. 2013).

**C.   <u>Judicial interpretation of § 1512 supports Caldwell's Motion to Dismiss</u>**.

In <u>Ermoian</u>, the Ninth Circuit held that an FBI investigation is not an "official

---

3  More proof that § 1512 is aimed at protecting the fact-finding process inherent in judicial and quasi-judicial proceedings is that it was passed as part of the Victim and Witness Protection Act of 1982 (VWPA), which was enacted by Congress for the purpose of "[e]nhanc[ing] and protect[ing] the necessary role of crime victims and witnesses in the criminal justice process."   VWPA, Pub. L. No. 97-291, § 2, 96 Stat. 1248 (1982).

proceeding" under § 1512(c)(2).   That court engaged in an extensive textual analysis of §

1512, first noting that "the definition of the phrase 'official proceeding' depends heavily

on the meaning of the word 'proceeding.'"   Id. at 899.   Observing that the descriptor

"official" precedes the word "proceeding," the Ninth Circuit found it likely that "the

legal—rather than the lay—understanding of the term 'proceeding' applied."   Id.   After

examining the plain language of § 1512 and § 1515(a), the Ermoian Court concluded that

the term "official proceeding" is tied to a formal hearing setting:

> Looking more broadly to § 1512 where the term "official proceeding" is
> repeatedly used, it becomes even more apparent that a criminal
> investigation is not incorporated in the definition.   Section 1512 refers to
> "prevent[    ] the attendance or testimony of any person in an official
> proceeding"; "prevent[    ] the production of a record, document, or other
> object, in an official proceeding"; and "be[ing] absent from an official
> proceeding to which that person has been summoned by legal process."   18
> U.S.C. § 1512(a)(1)(A)—(B), (a)(2)(B)(iv).   The use of the terms
> "attendance", "testimony", "production", and "summon[]" when describing
> an official proceeding strongly implies that *some formal hearing before a
> tribunal is contemplated*.

Ermoian, 727 F.3d at 901 (emphasis added).   The Ninth Circuit also observed that §

1515(a), which defines "official proceeding" in § 1512, refers to proceedings "before"

agencies and courts.   Id.   The court believed that Congress's use of the preposition

"before" in § 1515(a) -- ("proceeding *before* a Federal government agency") – further

proved that term "proceeding" applies to matters before entities that are "sitting as a

tribunal."   Id.   In other words, although an FBI investigation was technically an agency

"proceeding" as used in common vernacular, it was not a judicial or quasi-judicial like

"proceeding," which is clearly how the term is used in § 1512.

The Fifth Circuit, in United States v. Ramos, reviewed the legislative history of §
1512 and determined that the term "official proceeding" did not extend to an informal,
internal border patrol hearing.   United States v. Ramos, 537 F.3d 439, 462 (5th Cir.
2008).   In Ramos, the court observed that § 1512, and its amendment via the Sarbanes-
Oxley Act of 2002, was intended as "legislation against mayhem, murder and
intimidation in criminal proceedings and for protection for witnesses and victims from
such conduct[.]"   Ramos, 537 F.3d at 462.   The Fifth Circuit next examined the statute's
plain language, observing that the term "official proceeding" is "consistently used
throughout § 1512 in a manner that contemplates a formal environment in which persons
are called to appear or produce documents."   Id. at 463.   Like the Ninth Circuit, the
Ramos Court deemed it important that Congress used the preposition "before" in
describing the venue of a proceeding, implying "that an 'official proceeding' involves
some formal convocation of the agency in which parties are directed to appear[.]"   Id. at
462-63.   See also United States v. Binette, 828 F. Supp. 2d 402, 403-404 (D. Mass.
2011) (finding that a "preliminary" SEC investigation did not constitute an "official
proceeding" under § 1512 as compelled attendance, sworn testimony, and subpoena
powers had not taken effect).

The D.C. Circuit has read the term "proceeding" to also include investigations
within agencies that have adjudicatory power.   United States v. Kelley, 36 F.3d 1118,
1127 (D.C. Cir. 1994) (holding that a formal investigation opened by the Office of the
Inspector General of AID was a "proceeding").   In Kelley, however, the D.C. Circuit

distinguished between "mere police investigation[s]," which are not "proceedings," and "investigations typically [involving] agencies with some adjudicative power, or with the power to enhance their investigations through the issuance of subpoenas or warrants." Id. (internal quotes and citations omitted).   Notably, the D.C. Circuit premised its ruling on the fact that the Inspector General for AID was empowered to "issue subpoenas and compel sworn testimony in conjunction with an investigation of agency activities."   Id. In other words, the Inspector General for AID was empowered with quasi-judicial authority in addition to his investigative powers and, accordingly, obstructing the Inspector General *ipso facto* interfered with the administrative justice system.   Accord United States v. Perez, 575 F.3d 164, 169 (2nd Cir. 2009) ("[B]ecause [a BOP] review panel must 'determine' if there has been a violation of BOP policy, must make 'findings' and may 'decide' to refer the matter to senior departmental authorities, its work is sufficiently formal to satisfy the "official proceeding" element of § 1512(c)(1).").

Ermoian, Ramos, Binette, Kelley, and Perez share two fundamental commonalities.   First, these decisions presuppose that the day-to-day business of courts, agencies, and Congress is not synonymous with "proceedings" before these bodies. Second, these decisions agree that a "proceeding" is a formal event held before judicial or quasi-judicial bodies, or the ancillary actions of investigators acting as the arm of such bodies.   In short, judicial interpretation of the term "official proceeding" confirms that a purely ministerial, legislative vote-counting event like the Electoral College certification is not covered by § 1512.

**D.** **Congress has used other terms to describe the Electoral College**
  **Certification**.

Respectfully, the Government incorrectly conflates an "official proceeding" under
§ 1512 with a "federally protected function" under 18 U.S.C. § 231(a)(3) or the "official
business" of Congress under 40 U.S.C. § 5104(e)(2)(c).   In Count Seven of the
Indictment, for example, the Government charged Joshua James with Civil Disorder
under 18 U.S.C. § 231(a)(3), alleging that his actions "affected the conduct and
performance of a *federally protected function*."   ECF No. 210, ¶176 (emphasis added).[4]
Similarly, in other Capitol Riot cases, e.g., United States v. Alam, 21-MJ-165 (pending
Capitol Riot case), the Government charged defendants with violating 40 U.S.C. § 5104,
which prohibits entering "any of the Capitol Building[s]" intending "to disrupt the
orderly conduct of *official business*[.]"   40 U.S.C. § 5104(e)(2)(c) (emphasis added).

Accordingly, an "official proceeding before the Congress" under § 1512 clearly
constitutes a smaller subset of congressional activities than "federally protected
function[s]" and Congress's "official business."   Congress intended § 1512 to protect its
power of inquiry by ensuring that investigative committees received truthful testimony

---

4  The term "federally protected function" is defined as:
   [A]ny function, operation, or action carried out, under the laws of the
   United States, by any department, agency, or instrumentality of the United
   States or by an officer or employee thereof; and such term shall specifically
   include, but not be limited to, the collection and distribution of the United
   States mails.
18 U.S.C. § 232(3).

and full document production.   Had Congress intended a broader meaning in § 1512, it

would have used broader language such as "official business before the Congress."

**E.   The Department of Justice agrees with Caldwell**.

In asserting that § 1512 is aimed entirely at protecting evidence-gathering for

judicial and quasi-judicial functions, Caldwell has a powerful *amicus* on his side:   the

Government.   That is, the Department of Justice's own prosecution resource manual

confirms that the purpose of § 1512 is to protect the integrity of evidence for use at

hearings:

> Section 1512 of Title 18 constitutes a broad prohibition against tampering
> with a witness, victim or informant.   It proscribes conduct *intended to
> illegitimately affect the presentation of evidence* in Federal proceedings or
> the communication of information to Federal law enforcement officers.   It
> applies to proceedings before Congress, executive departments, and
> administrative agencies, and to civil and criminal judicial proceedings,
> including grand jury proceedings.

See DOJ *Resource Manual*, § 1729 (https://www.justice.gov/archives/jm/criminal-

resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or)

(emphasis added).   Moreover, the DOJ's prosecution manual, in Caldwell's judgment,

also accurately explains that the term "proceeding" in § 1512 has the same meaning as

used in preexisting obstruction of justice statutes §§ 1503 and 1505:

> This definition [of "proceeding" in § 1512] is in large part a restatement of
> the judicial interpretation of the word "proceeding" in §§ 1503 and 1505.
> However the case law interpreting these provisions also required that the
> proceeding had to be pending.   . . .[T[itle 18 U.S.C. § 1512 *does away with
> the pending proceeding requirement* for judicial matters and matters *within*

12

>*the jurisdiction of Congress* and Federal agencies.   In the words of § 1512,
>"an official proceeding need not be pending or about to be instituted at the
>time of the offense."

Id., § 1730 (emphasis added).

The DOJ's description of § 1512 as simply fixing a loophole in § 1505 –and not

changing the meaning of the word "proceeding" --is enlightening, as the latter statute

prohibits obstructing congressional "inquir[ies] or investigation[s]."   18 U.S.C. § 1505.

Congressional debates surrounding § 1505's predecessor statute (Section 241(a)),

moreover, confirm "that the 'proposed legislation simply extends the protection now

provided by law for witnesses in Court proceedings to witnesses in proceedings before

either House of Congress or committees of either House (or joint committees).'"   United

States v. Poindexter, 951 F.2d 369, 381 (D.C. Cir. 1991) (*quoting* congressional reports

from Senate and House).   In other words, § 1505, like its predecessor (§ 241(a)), was

intended to extend the obstruction of justice laws, which applied to courts, to

congressional inquiries and investigations.   In turn, § 1512 simply fixed a loophole in

§1505 by eliminating the "pending" proceeding requirement.

Respectfully, Caldwell agrees with the DOJ's interpretation of § 1512 as a tool to

protect the integrity of *evidence* necessary for Congress, courts, and agencies to conduct

investigations and adjudications.   Further, Caldwell agrees with the DOJ manual that the

term "proceeding" in § 1512 has a comparable meaning in § 1505, where it clearly

referred to Congress's investigations and inquiries.   At the risk of coming across as

flippant, Caldwell respectfully posits that the obstruction of <u>justice</u> law before the Court - - § 1512 – was intended by Congress to criminalize obstruction of <u>justice</u>.[5]

### F.  <u>The Electoral College Certification was not an "official proceeding</u>."

While the Electoral College certification process was a solemn occasion, it manifestly was not an "official proceeding" as that term is used in the obstruction of justice statute relied upon by the Government.   Congress was not engaged in a formal, fact-finding investigation or inquiry hearing wherein outside witnesses would be compelled to attend, documents subpoenaed, and sworn testimony was to be taken. Ironically, attempts by Republican members of Congress to debate the certified slates of electors were denied by both the House and the Senate.   167 Cong. Rec. H79-111 (2021); 167 Cong. Rec. S16-32 (2021).   Under the 12th Amendment, the certification process on January 6th was nothing more than a ministerial function of Congress that involved counting votes.   As such, there were no investigative procedures, public hearings, subpoenaed witnesses or documents, sworn testimony, or other hallmarks of a judicial-like proceeding or congressional inquiry.   While the Electoral College certification was arguably a "federally protected function," and definitely "official business" of Congress, it clearly was not an evidence-gathering, formal, judicial or quasi-judicial event which is at the heart and soul § 1512.

---

5  Any "ambiguity" in the Court's mind as to the meaning of the term "official proceeding" must be construed against the Government and in favor of Caldwell under the rule of lenity.   <u>United States v. Cook</u>, 594 F.3d 883, 890 (D.C. Cir. 2010).

As Count One alleges that the object of Caldwell's conspiracy was to obstruct the Electoral College certification, which does not constitute an "official proceeding" pursuant to § 1512, the Government's charging document fails to state an offense. Accordingly, Count One must be dismissed.

## II.    Count Two Should be Dismissed on the Same Grounds as Count One.

Count Two charges Caldwell and his co-defendants with Obstruction of an Official Proceeding and Aiding and Abetting in violation of 18 U.S.C. § 1512(c)(2). ECF No. 210, ¶166.   Caldwell incorporates by reference his arguments set forth supra regarding dismissing Count One.   If the Court agrees with Caldwell that Count One fails to state an offense, then Count Two must be dismissed on similar grounds, as it is the substantive offense challenged in Count One.

Respectfully, Caldwell submits that Count Two must be dismissed on the grounds that it fails to state an offense.

## III.    Count Nine Must be Dismissed as Duplicitious.

In Count Nine, Caldwell is charged with violating 18 U.S.C. § 1512(c)(1) by allegedly "unsending" a video he previously sent to co-defendant Donovan Crowl and by deleting Facebook photos "that documented his participation in the attack on the Capitol on January 6, 2021."   ECF No. 210, ¶¶179-183.   Count Nine avers that Caldwell's actions were intended to prevent the photos and video from being "use[d] in an *official proceeding*, that is, the FBI investigation and the grand jury investigation into the attack

15

on the Capitol[.]"   Id., ¶183 (emphasis added).   Respectfully, Count Nine is duplicitous and fails to state an offense and, accordingly, must be dismissed.

Count Nine is duplicitous as it alleges that Caldwell obstructed two "proceedings": the FBI investigation *and* a subsequent grand jury investigation.   An FBI investigation, however, does *not* qualify as an "official proceeding" under § 1512(c)(1).   Ermoian, 727 F.3d at 902 ("In light of the plain meaning of the term 'proceeding,' its use in the grammatical context of the 'official proceeding' definition, and the broader statutory context, we conclude that a criminal investigation is not an 'official proceeding' under the obstruction of justice statute."); see also Kelley, 36 F.3d at 1127 ("For an investigation to be considered a proceeding, then, it must be 'more than a mere police investigation.'") (*quoting* United States v. Batten, 226 F. Supp. 492, 493 (D.D.C. 1964)). As an FBI investigation, as a matter of law, is not an "official proceeding"—and, hence, obstructing such an investigation is not a violation of § 1512(c)(1), Count Nine effectively charges two separate and distinct *enumerated crimes* in one count and, hence, should be dismissed as duplicitous.

Count Nine's duplicity raises the very real probability that a jury could reach an improper guilty verdict based on the two different enumerated crimes averred.   See United States v. Starks, 515 F.2d 112, 116 (3rd Cir. 1975) (finding reversible error where defendant's indictment alleged "extortion" and "attempted extortion" as substantive offenses in one conspiracy count).   A significant "vice of duplicity is that a general verdict of guilty does not disclose whether the jury found the defendant guilty of one

crime or both."   Id.   A duplicitous charging document also raises Double Jeopardy

concerns, as "the verdict does not reveal whether the jury found [the defendant] not guilty

of one crime or not guilty of both."   Id.   In other words, some jurors may be believe that

Caldwell obstructed the FBI (a violation of an uncharged statute), while others may

believe he obstructed the grand jury.   Such a scenario would result in Caldwell being

improperly convicted by a non-unanimous jury.   Additionally, the possibility of the jury

being confused by Count Nine is substantial.   See United States v. Gordon, 844 F.2d

1397, 1401 (9th Cir. 1988) (explaining that a duplicitous count that charged two separate

conspiracies could cause juror confusion and the possibility of a non-unanimous verdict).

Count Nine should also be dismissed because the Government apparently provided

the grand jury with incorrect legal advice as to whether an FBI investigation constitutes

an "official proceeding" pursuant to § 1512.   As such, the Court cannot assume that the

grand jury's finding of probable cause was the product of an informed decision based on

the law.   The grand jury may have believed that Caldwell did not obstruct the grand jury

but did, however, obstruct the FBI, finding probable cause for the § 1512(c)(1) violation

based on the Government's incorrect legal advice.   Alternatively, this hybrid charge,

which is half FBI obstruction and half § 1512 grand jury obstruction, is not a cognizable

criminal offense.   See, e.g., Pedzich v. State, 33 Md. App. 620, 624 (1976) (reversing

conviction where defendant was charged with a "hybrid" count that contained elements

of both Maryland's deadly weapon statute and a statute that prohibits transporting a

handgun).   Count Nine is beyond repair and should be dismissed.

Respectfully, Caldwell submits that Count Nine must be dismissed as duplicitous and for failing to state an offense.

### IV.    <u>Count Four Should be Dismissed as it Fails to State an Offense.</u>

In Count Four, Caldwell and his co-defendants are charged with violating 18 U.S.C. § 1752(a)(1), Entering and Remaining on Restricted Grounds.   To violate this statute, a defendant must "knowingly enter[] or remain[] in any restricted building or grounds without lawful authority to do so."   <u>Id</u>.   A "restricted building or grounds" is defined as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."   18 U.S.C. § 1752(c)(1)(b).   The Indictment alleges that Caldwell "stormed past barricades and climb[ed] stairs up to a balcony on the west side of the Capitol building" at some point after 2:45 p.m. on January 6th.   <u>ECF</u> No. 210, ¶148. Further, the Indictment alleges that Vice-President Pence remained inside the Capitol at the time that Caldwell stood on the balcony outside of the Capitol, and remained there late into the night.   <u>ECF</u> No. 210, ¶¶8-9.   The Indictment does *not* allege that Caldwell ever entered the Capitol *building*.

Count Four fails to state an offense and must be dismissed.   To state a cognizable offense, the Government must show that Caldwell entered either a restricted building or restricted grounds.   First, the Indictment, in spelling out Caldwell's actions on January

6th, does not allege that Caldwell entered a "building" occupied by Vice-President Pence.[6]
Second, according to the Indictment, Vice-President Pence and Caldwell never occupied,
*contemporaneously*, the *grounds* of the Capitol.   Section 1752(c)(1)(B) clearly
distinguishes between a restricted "building" and restricted "grounds."   Title 40 of the
United States Code ("Public Buildings, Property, and Works"), moreover, also
distinguishes between "Capitol Buildings"—i.e., "the United States Capitol, the Senate,
and House Office Buildings and garages, [etc.] . . . and *the real property underlying and
enclosed by any of these structures*," 40 U.S.C. § 5101 (emphasis added), and the "United
States Capitol Grounds," which comprises 270 acres of land surrounding Capitol
buildings.   40 U.S.C. § 5102(a); <u>see also</u> Architect of Capitol website
(https://www.aoc.gov/explore-capitol-campus/buildings-grounds).

       Vice-President Pence was neither on nor visiting the Capitol *grounds* on January
6th.   He was presiding over the Senate inside the Capitol and, despite a breach by
protesters, remained in the Capitol *building* the entire day to finish his constitutional duty
to certify the 2020 election.   In other words, at the time that Caldwell allegedly accessed
a balcony on the *grounds* of the Capitol, Vice-President Pence was in the Capitol
Building.   Accordingly, on its face, Count Four must be dismissed as not stating an
offense.

---

6 The "speaking indictment" alleges in Count Four that Caldwell's trespass is related to
paragraphs 148 and 149 in the Indictment.   <u>ECF</u> No. 210, ¶170.   These paragraphs do
not allege that Caldwell entered the Capitol.   Instead, Caldwell allegedly made it to "a
balcony on the west side of the Capitol building."   <u>ECF</u> No. 210, ¶148.

Additionally, the Government does not allege that any of the barriers that Caldwell crossed were specifically erected for the Vice-President's visit *at the direction of the Secret Service*.   Instead, the Indictment alleges that the Capitol is secured "24 hours a day" and that the "Capitol Police maintain permanent and temporary barriers to restrict access to the Capitol exterior."   ECF No. 210, ¶5.   As such, outside barriers are *perpetually in place* at the Capitol, regardless of whether the Vice-President is presiding in the Senate.   Trespassing on certain portions of the grounds of the Capitol is always a crime, but Caldwell did not violate § 1752 unless Vice-President Pence was "visiting" or "temporarily visiting" 1) the specific area where Caldwell traversed; and 2) the Secret Service designated that area as a restricted zone.   Cf. United States v. Bursey, 416 F.3d 301, 308-09 (4th Cir. 2005) (upholding conviction under § 1752(a)(1) as the defendant had "the requisite intent" to violate the statute as he "understood the restriction to have been created by the Secret Service (as opposed to state or local law enforcement.")).

Although § 1752 does not specifically set forth as a required element that the Secret Service erected the temporary "no go" zone on the Capitol grounds, such a requirement is implied in the statute.   The Secret Service is authorized by 18 U.S.C. § 3056 to protect high-ranking officials, including the Vice-President.   Section 3056 is also referenced in the statute at hand, which advises that the temporary "restricted buildings and grounds" are for visits by individuals "authorized to [be] protected" by the Secret Service.   18 U.S.C. § 1752(c)(2).   A particular place does not become restricted because a VIP enters a building or grounds; rather, the agency in charge of protecting the

20

VIP, i.e., the Secret Service, creates the temporary restricted zone to facilitate its duty to protect.

Section 1752(c)'s legislative history and language also confirm that the "posted, cordoned off, or otherwise restricted area[s]" are created by the Secret Service.   As originally passed in 1970, the statute, 84 Stat. 1891, authorized the Treasury Department, which included the Secret Service at that time, to prescribe regulations for restricting grounds where the President and other protected leaders would visit.   18 U.S.C. § 1752(d)(2); 84 Stat. 1891.   Accordingly, the Treasury Department implemented numerous regulations, including requirements that the Secret Service designate certain "temporary residences" and "temporary offices" of their protectees and provide "notice to prospective visitors."   31 C.F.R. § 408.2(c).   In 2006, Congress, likely because the Secret Service was reassigned to the Department of Homeland Security, repealed subsection (d) of § 1752, which authorized the Treasury Department to promulgate regulations.   Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 252 (March 9, 2006). Nonetheless, the clear legislative intent behind § 1752 from the date of its enactment was to provide the Secret Service with authorization to create temporary protected zones to facilitate its role in protecting the President and other protectees.

The Secret Service routinely designates certain areas as restricted areas.   For example, in United States v. Zhang, WM-19-8100 (S.D. Fla. 2019), which was a recent prosecution of a suspected Chinese spy trespassing at former President's Trump's Mar-a-

21

Lago hotel, the affidavit in support of charging a violation of § 1752 emphasized that signs were posted expressly restricting entry and asserting Secret Service jurisdiction as follows:

> **UNITED STATES SECRET SERVICE RESTRICTED AREA**
> **This area is under the jurisdiction of the U.S. Secret Service.   You are entering a "Restricted Building or Grounds" as defined in Title 18, United States Code, Section 1752.   Persons entering without lawful authority are subject to arrest and prosecution.**

Id., ECF No. 1, Aff., ¶3 (entered Apr.1, 2019).   The instant Indictment does not allege that the Secret Service was exercising jurisdiction over the Capitol grounds.

Count Four fails to state an offense.   The Government's speaking Indictment does not allege that the Secret Service specifically restricted the Capitol grounds accessed by Caldwell.   Alternatively, even if the Capitol grounds were "restricted" under § 1752(a)(1) at one point on January 6th, Caldwell and Vice-President Pence, per the Indictment, never contemporaneously occupied the grounds when they were restricted. As such, respectfully, Count Four must be dismissed.

## Conclusion

For all of the foregoing reasons, Caldwell respectfully requests that the Court dismiss all counts of the Indictment with prejudice.

## Request for Hearing

As Caldwell raises substantial issues of law in the foregoing Motion to Dismiss, it

22

is respectfully requested that a hearing be conducted for the Court to consider oral

arguments.

Respectfully submitted,


_____/s/_____
David W. Fischer, Esq.
Federal Bar No. 023787
Law Offices of Fischer & Putzi, P.A.
Empire Towers, Suite 300
7310 Ritchie Highway
Glen Burnie, MD 21061
(410) 787-0826
Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of June, 2021 a copy of the foregoing Motion to Dismiss Indictment was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:      Office of the United States Attorney
555 4th Street, NW
Washington, DC 20001


_____/s/_____
David W. Fischer, Esq.

24